UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


MADALINE S. KEROS, WILLIAM J.      )
KEROS, and THE GEORGE W. KEROS     )
IRREVOCABLE TRUST AGREEMENT        )
f/b/o WILLIAM J. KEROS dated       )
JUNE 24, 1994, ON BEHALF OF        )
THEMSELVES and ALL OTHERS          )
SIMILARLY SITUATED,                )
      Plaintiffs               )
                                   )
                                   )
              v.               )   C.A. No. 12-cv-11294-MAP
                                   )
MASSACHUSETTS MUTUAL LIFE          )
INSURANCE COMPANY, THOMAS C.       )
BARRY, CRISTOBAL I. CONDE,         )
KATHLEEN A. CORBET, ROGER W.       )
CRANDALL, JAMES H.                 )
DEGRAFFENREIDT, JR., PATRICIA      )
DIAZ DENNIS, ROBERT A. ESSNER,     )
ROBERT M. FUREK, RAYMOND W.        )
LEBOEUF, CATHY E. MINEHAN, MARC )
F. RACICOT, WILLIAM T. SPITZ,      )
and H. TODD STITZER,               )
      Defendants               )


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 21 & 23)

August 5, 2013

PONSOR, U.S.D.J.

I. INTRODUCTION

In this one-count class action complaint, Plaintiffs,
who own life insurance policies issued by Defendant
Massachusetts Mutual Life Insurance Company ("MassMutual")
on the lives of persons other than themselves, allege that
for at least the past fifty years Defendants have breached

their fiduciary duty.  The alleged breach lies in
Defendants' affording voting rights only to persons whose
lives are insured, and not (in the unusual case where there
is a difference) to policy owners such as themselves.
Plaintiffs argue that Mass. Gen. Laws ch. 175, § 94 requires
that voting rights should not be allocated to individuals
whose lives are <u>insured</u> by life insurance policies but,
instead, (where there is a difference) to individuals like
them who <u>own</u> the life insurance policies on others.
Plaintiffs' argument, if it were successful, would
disenfranchise hundreds of thousands of persons whose lives
are insured by Defendant MassMutual and shift voting rights
to persons who are owners of policies but whose lives are
not insured under the policies' terms.

For starters, as will be seen below, Plaintiffs'
interpretation of § 94 is doubtful.  Equally important,
Plaintiffs concede that the language of the relevant
insurance policies explicitly contradicts Plaintiffs'
position.  These contracts, since at least 1963 (Defendants
say since the mid-nineteenth century), have unambiguously
allocated voting rights to persons whose lives are insured,
and not, where a difference exists, to policy owners.
Plaintiffs do not allege any deception or self-dealing on
the part of Defendants in their construction of the

-2-

statutory and contractual terms, or indeed any misbehavior
of any kind beyond a possible, but hardly manifest,
misinterpretation of the law.  Indeed, none of the
individual Defendants, current directors of MassMutual, is
even alleged to have held his or her position in 1963, when
Plaintiffs allege the current practice of allocating voting
rights was adopted.  Significantly, the policies have for
many decades been subject to scrutiny by the Massachusetts
Insurance Commissioner and have never been disapproved.
Everything has been above board; no one is alleged to have
taken advantage for personal gain.

Despite the interesting questions relating to § 94, and
the maze-like arguments Plaintiffs weave, the determinative
question in this case lies below any dispute about the
import of a confusing statute and on a much simpler level.
In order to state a claim for breach of fiduciary duty,
Plaintiffs must plausibly allege that Defendants'
continuation of the longstanding allocation of voting rights
has not only been incorrect but has constituted a species of
misbehavior substantially more profound than a mere error of
statutory interpretation.  While Plaintiffs' reading of § 94
may -- with the head tilted and one eye closed -- appear to
have some force, Defendants' contrary construction comports
more comfortably with the normal usage of the term "insured"

and is certainly reasonable.  Under these circumstances, even in the unlikely event that Defendants' construction of the statute were found to be incorrect, the actions taken by them in reliance on that interpretation fall far short of the level of misconduct necessary to make out a claim for breach of fiduciary duty.  For this reason, Defendants' motions to dismiss will be allowed.

## II. <u>FACTS</u>

Plaintiffs own life insurance policies issued by MassMutual that insure the lives of someone other than themselves, pay premiums, and receive dividends.  They contend that approximately twenty-five percent of MassMutual policyholders (over 300,000) hold policies that insure the lives of others.

Named Plaintiffs purchased policies that were originally issued by Connecticut Mutual Life Insurance Company, which merged with MassMutual in 1996.  Plaintiffs allege that the class, comprised of policy owners who are not so called "life-insureds," has been denied its right to vote in the election of the directors for MassMutual since at least 1963.

MassMutual is a mutual insurance company organized

under the laws of Massachusetts.  The individual Defendants
are the current directors of MassMutual.

A mutual insurance company is an insurer "whose
policyholders are its owners, as opposed to a stock
insurance company owned by outside shareholders."  Black's
Law Dictionary 876 (9th ed. 2009).  Like a stock
corporation, a mutual insurance company relies on outside
equity owners to finance the firm.  However, the equity
owners -- so called "policyholders" -- are also customers
who contract with the company for a service.  One treatise
explains the main feature of a mutual insurance company as
follows:

> Mutual insurers . . . are owned by their
> policyholders.  This is the primary difference
> between the mutual insurance companies and stock
> insurers.  The owners of a stock insurance company
> are not necessarily insureds of the company; the
> owners of a mutual insurance company are always
> insureds of the organizations.  Mutual insureds
> become owners merely by purchasing insurance from
> a mutual company.

Herbert S. Denenberg, Risk & Insurance 172 (1964).

MassMutual's current by-laws provide that "[a]ll
directors shall be elected by the members of the Company at
the annual meeting."  (Dkt. No. 1, Compl. ¶ 53.)  It is
undisputed that MassMutual has for many decades interpreted
"members" to be the life-insureds, and (where there is a

-5-

difference) not the policy owners.

It is also undisputed that MassMutual's policies have always provided clear notice of this allocation of voting rights.  The complaint offers no allegation of any deception or ambiguity about the company's longstanding practice.  The policy endorsement states: "The Insured/Annuitant is hereby notified that by virtue of this policy/contract he or she is a member of Massachusetts Mutual Life Insurance Company and is entitled to vote in person or by proxy at any and all meetings of said Company."  (Dkt. No. 25, Avery Decl. Exs. B & D.)  In the policies, the "insured" is listed as the person whose life is insured by the policy (the life-insured) and the policyholder is referred to as the "owner." As noted, usually these two positions are occupied by the same flesh-and-blood person.

Plaintiffs as policyholders, but not life-insureds, allege that they each have been denied at least 19 votes annually based on MassMutual's grant of voting rights to the life-insured.  They contend that, as a result of MassMutual's allocation of voting rights, they have not been

able to hold the Board of Directors accountable.[1] Plaintiffs argue, in essence, that as policyholders they have suffered losses as equity owners but have been unable to hold MassMutual's Board accountable because of the allegedly improper allocation of voting rights.

The verified class action complaint offers only one cause of action, breach of fiduciary duty, against all Defendants.  Plaintiffs allege that the individual Defendants breached their fiduciary duty to the Company and policyholders by precluding policyholders who hold policies insuring the lives of others from voting in the election of MassMutual's Board of Directors.  Plaintiffs ask the court for orders granting: (1) declaratory relief holding that Defendants violated Massachusetts law in denying policyholders voting rights for MassMutual's Board of Directors; (2) declaratory relief holding that Defendants

---

[1] Plaintiffs allege that this deprivation is material given that MassMutual allegedly agreed to pay $1 billion to settle claims arising from its participation in the Ponzi scheme orchestrated by Bernard L. Madoff Investment Securities, LLC. Defendants appear to contest Plaintiffs' claim about this supposed payment.  For a description of the Ponzi scheme, see In re Bernard L. Madoff Inv. Sec., LLC, 424 B.R. 122, 126-33 (S.D.N.Y. 2010).

violated Massachusetts law in giving only individuals who are life-insureds voting rights for MassMutual's Board of Directors; (3) preliminary and permanent injunctions prohibiting MassMutual from denying policy owners the right to vote; (4) preliminary and permanent injunctions prohibiting MassMutual from allowing life-insureds the right to vote; (5) preliminary and permanent injunctions prohibiting Defendants from allowing anyone other than policyholders to serve on the Board of Directors; (6) compensatory damages for all losses and damages suffered as a result of the wrongful deprivation of voting rights; and (7) costs and disbursements, including attorneys' fees.

Individual Defendants and Defendant MassMutual have filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 21 & 23.) For the reasons summarized above and discussed in greater detail below, these motions will be allowed.

### III. DISCUSSION

#### A. Breach of Fiduciary Duty.

As noted, Plaintiffs plead only one count against Defendants, breach of fiduciary duty. To survive a motion to dismiss, the complaint must contain "sufficient factual

-8-

matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  While the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of a plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.  Id. Dismissal is appropriate if the complaint does not set forth "factual allegations, either direct or inferential, respecting each element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

To establish a breach of fiduciary duty, a party must show three things: (1) that a fiduciary relationship existed that created a duty, (2) that a defendant breached that duty, and (3) that the breach caused damage.  Hanover Ins. Co. v. Sutton, 705 N.E.2d 279, 288-89 (Mass. App. 1999).[2]

_____

[2] While Plaintiffs claim to offer this count against all Defendants, the complaint, in fact, appears to lack even

It is undisputed that a company director stands as a fiduciary in relation to both the company's members and the company itself.  "It is a basic principle of our corporate law that a director has a fiduciary relationship with the corporation.  This relationship includes duties of loyalty and of care -- that is, of 'reasonable intelligence' in the oversight of corporate business."  <u>Blackstone v. Cashman</u>, 860 N.E.2d 7, 17 (Mass. 2007).[3]

A director's standard of duty is also well established:

---

an allegation that Defendant MassMutual had a fiduciary relationship with Plaintiffs.  Count I only mentions the individual Defendants, not MassMutual.  (Dkt. No. 1, Verified Compl. ¶¶ 68-73) This omission alone would probably support allowance of MassMutual's motion to dismiss (Dkt. No. 21).  The apparent pleading defect need not, however, be pursued given the substantive deficiency of the complaint.


[3] Both parties cite to corporate fiduciary duty standards, and there is no argument that these principles are inapplicable to mutual insurance companies.  The court will thus treat them as such.  Massachusetts Insurance Law provides that "[t]he general principles of law relative to the powers, duties and liabilities of corporations shall apply to all incorporated domestic [insurance] companies."  Mass. Gen. Laws ch. 175, § 30.  Statutory provisions defining the powers of corporate directors are applicable to domestic mutual insurance companies.  <u>Id.</u> Massachusetts state and federal courts have applied corporate law concepts to mutual insurance companies, boards of directors, and policyholders.  <u>See</u> <u>Pomerantz v. Clark</u>, 101 F. Supp. 341 (D. Mass. 1951); <u>Harhen v. Brown</u>, 730 N.E.2d 859 (Mass. 2000); <u>Silverman v. Liberty Mut. Ins. Co.</u>, 2001 WL 810157 (Mass. Super. July 11, 2001).

> [Directors] are bound to act with absolute
> fidelity and must place their duties to the
> corporation above every other financial or
> business obligation. <u>They must act, also, with
> reasonable intelligence, although they cannot be
> held responsible for mere errors of judgment or
> want of prudence.</u>  They cannot be permitted to
> serve two masters whose interests are
> antagonistic. They are liable if, through their
> bad faith, financial loss to the corporation
> results. They are responsible if they unlawfully
> divert the assets of the corporation. <u>If
> directors, acting in good faith, nevertheless act
> imprudently, they cannot ordinarily be held to
> personal responsibility for loss unless there is
> 'clear and gross negligence' in their conduct.</u>

<u>Spiegel v. Beacon Participations</u>, 8 N.E.2d 895, 904 (Mass.

1937)(emphasis added).

Directors, in sum, must use their reasonable judgment,

but as long as they are acting in good faith they do not

breach their fiduciary duties unless they act with clear and

gross negligence.  "The business judgment rule protects

directors and officers from liability for conduct they have

taken in good faith, with the care that a person in a like

position would reasonably believe appropriate in similar

circumstances, and in a manner the director or officer

reasonably believes to be in the best interests of the

corporation."  <u>Halebian v. Berv</u>, 931 N.E.2d 986, 991 n.11

(Mass. 2010).

Plaintiffs allege that individual Defendants breached their fiduciary duties by precluding policy owners from voting and by allowing only life-insureds to vote. (Dkt. No. 1, Compl. ¶¶ 70-72.)  To employ the adverb used in the complaint, according to Plaintiffs these Defendants "incorrectly" interpreted the controlling statute.  (<u>Id.</u> at ¶ 52).  This act of incorrect interpretation is alleged in purely conclusory terms to constitute a failure to act in good faith.  (<u>Id.</u> at ¶ 72).  This failure, Plaintiffs say, <u>ipso</u> <u>facto</u> constituted a breach of fiduciary duty.

A close look at the statute in question makes it clear just how debatable this argument is and, as a result, how vaporous the claim of breach of fiduciary duty is.[4]  The reasonableness of the directors' actions requires an examination of the statute.

B.   <u>Mass. Gen. Laws ch. 175, § 94</u>.

The preliminary question in this case, as noted, is whether Massachusetts law clearly demands that voting rights at MassMutual's annual meetings be granted to individuals

_____

[4] As Defendants point out, Plaintiffs clearly have not offered a <u>Caremark</u> claim.  <u>See</u> <u>In re Caremark Int'l Inc. Deriv. Litig.</u>, 698 A.2d 959 (Del. Ch. 1996).  This is not a case about the absence of an oversight system that amounted to "a sustained and systematic failure of the board to exercise oversight."  <u>Sachs v. Sprague</u>, 401 F. Supp. 2d 159, 165 (D. Mass. 2005).  Plaintiffs, in any event, do not argue that their claims are viable under <u>Caremark</u>.

whose lives are insured (life-insureds) or to individuals who own the life insurance policies (policyholders).  While in at least three-quarters of the life insurance policies the life-insured _is_ the policyholder, an individual can hold an insurance policy that insures the life of another person. In fact, as noted, Plaintiffs have alleged that over 300,000 of MassMutual's policy owners hold policies that insure the life of another person.  Named Plaintiffs in this case own life insurance policies on their father and sister.  The goal of this litigation is apparently to remove the voting rights from the father and sister and transfer them to the children and siblings.[5]

Section 94 provides that "every _person_ _insured_ under a policy of life or endowment insurance issued by a domestic mutual life company shall be a member thereof and entitled to one vote . . . ."  Mass. Gen. Laws ch. 175, § 94 (emphasis added).

---

[5] This is only the "apparent" goal, since the complaint does not specify whether Plaintiffs propose to acquire voting rights by supplanting their father and sister or in addition to them.  Significantly, there is no allegation that the father and sister exercised their voting rights in a manner different than Plaintiffs would have, that Plaintiffs attempted to obtain their father's and sister's proxies to enable them to vote, or even that the father and sister voted at all.

Common usage and abundant authority support the
conclusion that "person insured" in the quoted statutory
passage most likely refers to the person whose life has been
insured, <u>i.e.</u>, the life-insured.  This is, first of all, the
most intuitively resonant meaning of the term.  One more
naturally speaks of being "insured" when one has a policy of
life insurance on one's own life, not when one has a policy
of life insurance on someone else.

In <u>Couch's Cyclopedia of Insurance Law</u>, the definition
of "insured" begins with general language: "The party who
enters into the contract of insurance . . . with the insurer
is called the 'insured.'"  2A Ronald Anderson, <u>Couch's
Cyclopedia of Insurance Law</u> § 23.1 (2d ed. 1984).  This
treatise follows, however, by making clear that in the life
insurance context the word "insured" "means the person whose
life is insured and whose death matures the obligation of
the insurer to pay."  <u>Id.</u>

<u>Black's</u> similarly confirms that "insured" in the life
insurance context can refer to the "life-insured," though it
recognizes that the term may sometimes refer to the
policyholder as well.  An "insured" is a person "who is

-14-

covered or protected by an insurance policy." Black's Law
Dictionary 879.

The Supreme Court has recognized that "insured" may,
depending on the context, refer to the person whose life is
covered.  The Court noted that "[t]he application of either
['assured' or 'insured'] to the party for whose benefit the
insurance is effected, or to the party whose life is
insured, has generally depended upon its collocation and
context in the policy."  Connecticut Mut. Life Ins. Co. v.
Luchs, 108 U.S. 498, 504 (1883).

Significantly, at least one instance exists in the
Massachusetts insurance statute where "insured" can only
refer to a life-insured and not to the policy owner.  Mass.
Gen. Laws ch. 175, § 120E forbids genetic discrimination in
the issuance of life insurance, unless there is "reliable
information relating to the insured's mortality or
morbidity."  Obviously, the term "insured" here can refer to
no one other than the person whose physical body enjoys the
coverage.

Defendants have also pointed to instances where, when
the Massachusetts legislature explicitly wanted to confer

voting rights on someone other than the life-insured, it made this intent manifest.  For example, chapter 175, § 132D provides that "[u]nder any group annuity contract issued by a domestic mutual life company, the holder only shall be a member of the company, and entitled to one vote by virtue of such contract at the meetings of the company."  Ch. 175, § 137 provides that "[u]nder any group policy issued by a domestic mutual life company, the employer only shall be a member of the company, and entitled to one vote by virtue of such contract at the meetings of the company."

In sum, various authorities provide credible support for Defendants' conclusion that § 94 intended "insured" to refer to the person whose life is insured and not, where there is a difference, to the policyholder.  Based on this, the inclusion of language in MassMutual's insurance policies sixty years ago adopting this approach can hardly be described as a breach of fiduciary duty.  Still less can the current directors' continuing tacit approval of this clearly disclosed contractual allocation of voting rights constitute misconduct rising to the high level of egregiousness required to support a jury in concluding that such a breach

-16-

has occurred.  Cf. Spiegel, 8 N.E.2d at 904.

In reaching this conclusion it is proper to acknowledge that Plaintiffs' interpretation of the term "insured" does have some support.  With respect to the election of directors, § 94 provides that: "After the first election, the directors shall be chosen by and from the policyholders; provided, that in case of a company having outstanding a guaranty capital, one third of the directors may be chosen by and from the stockholders thereof.  No person shall be qualified to serve as a director after he ceases to be such a policyholder or stockholder, as the case may be."  Id. (emphasis added).

It may be plausibly argued that the term "policy-holders" in this passage refers to the individual who purchased and holds the insurance policy.  On the other hand, the insertion of the word "policyholder" in this context may simply reflect imprecision on the part of the legislature, based on the assumption, usually correct, that the policyholder and the life-insured are the same person.  As Defendants suggest, the insertion of this language by amendment in 1930 may have reflected an emergency response

to the recent stock market collapse and the decision to make clear the role of stockholders in the company.

Plaintiffs lean heavily on policy reasons for aligning equity ownership with voting rights.  Mutual insurance companies are set up so policyholders have an equity interest in the company, and Plaintiffs contend that their equity interest entitles them to rights similar to stockholders.  See, e.g. E.R. Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1100 (D. Mass. 1990) ("[O]ne of the most sacred rights of any shareholder is to participate in corporate democracy.")

In Massachusetts, no federal or state court has directly addressed the proper allocation of voting rights in mutual life insurance companies.  Some decisional law discussing mutual life insurance companies appears to assume that "policyholders" possess the right to vote under Mass. Gen. Laws ch. 175, § 94.  Pomerantz v. Clark, 101 F. Supp. 341, 345 (D. Mass. 1952) ("Nothing of legal significance . . . is to be attributed to the mere fact that plaintiff is a policyholder rather than a shareholder.  He has voting rights of the character set forth in Mass. G.L. (Ter. Ed.) c. 175, Sec. 94."); Harhen v. Brown, 710 N.E.2d 224, 803

-18-

(Mass. App. Ct. 1999), rev'd on other grounds 730 N.E.2d 859
(Mass. 2000) (determining that when the common law of
corporations is applicable to mutual insurance companies,
"stockholders" should be read as "members," "i.e.
policyholders"); Silverman v. Liberty Mut. Ins. Co., 2001 WL
810157, at *12 n.9 (Mass. Super. July 11, 2001) ("In a
mutual company, all policyholders are Members.  In this
context, the term, 'Members,' is simply another
characterization of policyholders.")

In the end, Plaintiffs' policy argument is weak.  It is

   None of these cases, however, attempts to address any
distinction between a life-insured and a policyholder, and
none of them significantly undermines Defendants' decision
to allocate voting rights to life-insureds.  Certainly no
Massachusetts case law even hints that allocating voting
rights to life-insureds would constitute the sort of
egregious misconduct that would provide the basis for a
claim of breach of fiduciary duty.

   In the end, Plaintiffs' policy argument is weak.  It is
difficult to discern, for example, how the allocation of
voting rights to persons whose lives are insured, rather
than to policy owners, would compromise the company's

governance.  First of all, as this memorandum has repeatedly
noted, most of the time the policy owner and the life-
insured will be the same person.  Even where there is a
difference, however, a person who is depending on insurance
proceeds to support his or her loved ones after death will
surely have a strong interest in the competent management
and financial health of the insurance company upon whom his
or her family's material security may in the course of years
depend.  The complaint certainly offers no allegation that
the would-be voters here would have done a more vigorous or
effective job in participating in corporate democracy than
their father and sister.

At most, the complaint describes a supposed error made
fifty years ago as to the proper reading of the statute.
Other than perpetuating MassMutual's longstanding and openly
disclosed voting protocol, the current Board of Directors is
not alleged to have done anything wrong.  A borderline claim
for a mistake in judgment is insufficient to make out a
breach of fiduciary duty.  Nothing alleged is sufficient to
suggest bad faith or "clear and gross negligence."  Spiegel,
8 N.E.2d at 904.

To put the capper on the analysis, the Massachusetts

Insurance Commissioner must review each domestic company every five years to inspect and examine its affairs including "whether it has complied with the law . . . and the equity of its dealings with its policyholders."  Mass. Gen. Laws ch. 175, § 4.  The Commissioner also "administer[s] and enforce[s] the provisions of [chapter 175]."  Ch. 175, § 3A.  The Commissioner may refer facts to the attorney general for prosecution "if upon complaint, examination or other evidence exhibited to him he is of the opinion that any provision of said chapters has been violated."  Id.  No such action has ever been taken, or so far as the complaint discloses, even contemplated by the Insurance Commissioner.  While this absence of administrative action does not establish the practice's legality, the longevity of MassMutual's voting allocation, its clear disclosure, and the lack of complaint for so many decades supports the reasonableness of Defendants' actions.[6]

## IV. CONCLUSION

In the end, the disposition of this case derives from a

---

[6] Blasius Indus. v. Atlas Corp., 564 A.2d 651 (Del. Ch. 1988), which suggests that a business judgment rule does not apply to a denial of voting rights, does not support a different ruling here.  First, Blasius has not been adopted by any federal or state court in Massachusetts.  Second, the facts of that case involved action by the defendants aimed at "preventing the effectiveness of a shareholder vote."  Id. at 660.  Nothing of the kind is alleged here.

straightforward comparison of the allegations of the complaint with the well-established elements for a claim of breach of fiduciary duty.  This exercise makes it manifest that the allegations of the complaint are flatly insufficient as a matter of law to support the asserted cause of action.  For the foregoing reasons, Defendants' Motions to Dismiss (Dkt. Nos. 21 & 23) are hereby ALLOWED.

The clerk is ordered to enter judgment for Defendants. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge